## SANBORN v. COMMISSIONER OF INTERNAL REVENUE.*

No. 10745.

Circuit Court of Appeals, Eighth Circuit.

Feb. 17, 1937.

Llewellyn A. Luce, of Washington, D. C. (John M. Cleary and Phil D. Morelock, both of Kansas City, Mo., on the brief), for petitioners.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before SANBORN, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This is a petition for review of a decision of the Board of Tax Appeals entered March 30, 1936, which determined that there was a deficiency of $22,295.50 in petitioners' federal income tax for the calendar year 1929.

It appears from the record that the petitioners were respectively executrix and executor of the estate of William E. Minor, deceased; that Dr. Minor died testate December 15, 1928; and that his estate was closed March 31, 1930.

The third paragraph of the will of Dr. Minor contained the following provisions:

"Third: I own and hold forty-eight (48) shares of the stock of the Midland Realty Company, a corporation, of Kansas City, Missouri, which is all of said stock except two shares. The title to much of the lands and personal property hereinafter in this paragraph described is vested in said corporation, but it is my intention and desire that the title to all of the property in this paragraph described, except said Midland Realty Company stock, shall ultimately be

*Writ of certiorari denied 57 S.Ct. 930, 81 L.Ed. —.

vested in my said daughter, Marie Minor Sanborn. Said lands and personalty are described as follows: [Here follows a description of the properties]. * * *

"As to all of the property in this paragraph described the title to which is now vested in me, except said Midland Realty Company stock, I hereby will, devise and bequeath the same to my said daughter.

"I also will, devise and bequeath to my said daughter a sum of money equal to the value of all the property in this paragraph described, both real and personal, the title to which is now vested in the Midland Realty Company, and this legacy shall constitute and be a charge upon my said forty-eight (48) shares of stock in said Midland Realty Company, and this legacy shall be in addition to all other legacies or devises herein made to my said daughter. This legacy, however, may, and it is my intention and desire that it shall, be paid in full in the following manner; that is to say, if the said Midland Realty Company shall convey the property in this paragraph described, the title to which now stands in the name of the said Midland Realty Company, to my said daughter, the same shall be accepted by her as a full and complete satisfaction and payment of the legacy in this paragraph bequeathed to her, to the extent of the property in this paragraph described, the title to which now stands in the name of said Midland Realty Company, and if accepted by her, or if such conveyance shall be tendered by said Midland Realty Company to her and declined by her, in either event, the said stock shall be released from the charge in this paragraph imposed upon it, and in the event my said daughter shall decline to accept such conveyance, the said forty-eight (48) shares of stock shall pass to and vest in, and I hereby bequeath the same in the following proportions to the following legatees and devisees, to-wit: To my said daughter, one-half (½) thereof, and to the legatees and devisees named in paragraph (9) hereof, the other one-half (½) to be divided among them equally; and to the end that the title to the property in this paragraph described, which is now held by said Midland Realty Company, may as promptly as possible be vested in my said daughter, I hereby empower and direct her as executrix of this will to vote all of my said forty-eight (48) shares of stock at any and all stockholders meetings of said company, in favor of a resolution directing said corporation to convey all of the property in this paragraph described, the title to which now stands in the name of the said Midland Realty Company, to my said daughter, and this power to vote the said stock shall be vested in my said daughter alone, but she may designate another as her proxy to vote the same, and both she and my said executor, hereafter named, shall by all proper means expedite and facilitate the conveyance to her of the property in this paragraph described, the title to which is now vested in the said Midland Realty Company, and my said daughter as executrix of this will shall also have exclusive power by herself, or her agent duly appointed by her, to vote the said forty-eight (48) shares of stock on all questions which may come before the stockholders meetings of said corporation.

"If for any reason the title to the property now standing in the name of the said Midland Realty Company, and in this paragraph described, shall not be conveyed to my said daughter within two years from the date this will shall be offered for probate, unless such conveyance shall be prevented by legal proceedings, and if so prevented, then within six months after the termination of such proceedings, then the said forty-eight (48) shares of stock, or so much thereof as may be necessary for that purpose, shall be sold by my executrix and executor hereinafter appointed, and out of the proceeds of such sale they shall pay to my said daughter a sum of money equal to the then value of the property in this paragraph described, the title to which now stands in the name of the Midland Realty Company, and for that purpose shall have the said property duly appraised, and after the payment of an amount equal to the said appraised value the balance of any money received from the sale of said stock, if any, and the remainder of said stock, if any shall remain unsold, shall pass to, and I hereby bequeath the same to the legatees named in paragraph nine (9) hereof in equal parts."

The daughter, Marie Minor Sanborn, elected under said paragraph of the will to take the real estate, and she filed such an election with the probate court.

Meetings were held of the directors of the Realty Company and of the stockholders, and, in pursuance of the authority given at said meetings, the Realty Company, on February 13, 1929, deeded to Marie Minor Sanborn the parcels of real estate described as above. No question is raised as to the regularity of these proceedings.

The Midland Realty Company was organized in 1904 with an authorized capital of $5,000, all of which, except two qualification shares, was owned by Dr. Minor.

On the 13th of February, 1929, the earned surplus of the Realty Company undistributed and accumulated since February 28, 1913, was $212,200.79. The shares of stock owned by Dr. Minor in said Realty Company were included in the federal estate tax return at their fair market value at the date of his death at the figure of $710,000.

The Board of Tax Appeals held that the distribution of the real estate, that is, the conveyance by the Realty Company to Marie Minor Sanborn, constituted a dividend to the estate of William Eli Minor to the extent of the corporate earnings accumulated after February 28, 1913; and held, further, that the transfer of the real estate to the daughter was not a distribution of income within the meaning of section 162(c) of the Revenue Act of 1928 (26 U. S.C.A. § 162(c) and note); and, therefore, that the estate was not entitled to any deduction in determining its net income.

The petitioners contend on the present appeal that the transfer of the real estate direct to Marie Minor Sanborn was not a dividend received by the estate; and, second, if it was a dividend so received, it was immediately distributed; and under the provisions of section 162(c) of the Revenue Act of 1928 (26 U.S.C.A. § 162(c) and note), was an allowable deduction in determining net income.

The petitioners point out that Marie Minor Sanborn at the time of the distribution was not a shareholder in the Midland Realty Company, and they cite the case of Taplin v. Commissioner (C.C.A.) 41 F.(2d) 454, to the effect that dividends cannot be created by fiat alone.

They also point out that the real property involved was not actually or constructively received by the petitioners, and therefore could not be income to the estate.

They also contend that, if such real estate could be held a constructive dividend, a deduction was allowable under section 162(b) and (c) of the 1928 act (26 U.S.C.A. § 162(b, c) and note); and they point to such cases as Bowers v. Slocum (C.C.A.) 20 F.(2d) 350, and McCaughn v. Girard Trust Co. (C.C.A.) 19 F.(2d) 218. See, also, Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365.

And the petitioners finally contend that, if they are forced to pay an income tax on the value of the real estate transferred, they will be subject to a double tax on the same properties; first, an estate tax which has been paid on the stock based on the value of the properties; and, second, an income tax on the theory that the properties were income to the estate during the process of administration.

The respondent contends that the estate was the stockholder, and that the transfer of the real estate to Marie Minor Sanborn was for the accommodation of the estate, and that it was thereby relieved of the payment of a cash bequest. Respondent contends that the distribution of $212,200.79 constituted a dividend to the estate, within the meaning of the act. Section 115 (a) of the Revenue Act of 1928 (26 U.S.C.A. § 115(a) and note). As to the contention that the petitioners were entitled to deduct the amount of the dividend under section 162, he relies upon the cases of Burnet v. Whitehouse, 283 U.S. 148, 51 S.Ct. 374, 75 L.Ed. 916, 73 A.L.R. 1534, and Helvering v. Butterworth, supra.

Pertinent statutes and regulations are as follows:

Section 115(a) of the Revenue Act of 1928 defines "dividend" as follows:

"The term 'dividend' when used in this title [chapter] (except in section 203(a) (4) and section 208(c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

"(b) *Source of distributions.*—For the purposes of this Act [the Revenue Act of 1934] every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits. Any earnings or profits accumulated, or increase in value of property accrued, before March 1, 1913, may be distributed exempt from tax, after the earnings and profits accumulated after February 28, 1913, have been distributed, but any such tax-free distribution shall be applied against and reduce the adjusted basis of the stock provided in section 113 [214]." 26 U.S.C.A. § 115(a, b) and note.

"§ 162. *Net income.* The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that— * * *

"(c) In the case of income received by estates of deceased persons during the period of administration or settlement of the estate, and in the case of income which, in the discretion of the fiduciary, may be either distributed to the beneficiary or accumulated, there shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year, which is properly paid or credited during such year to any legatee, heir, or beneficiary, but the amount so allowed as a deduction shall be included in computing the net income of the legatee, heir, or beneficiary." 26 U.S.C.A. § 162 (c) and note.

Treasury Regulations 74, promulgated under the Revenue Act of 1928:

"Art. 621. *Dividends.*—The term 'dividends' for the purpose of Title I (except when used in sections 203 [a] [4] and 208 [c] [1]) comprises any distribution in the ordinary course of business, even though extraordinary in amount, made by a domestic or foreign corporation to its shareholders out of its earnings or profits accumulated since February 28, 1913. * * *

"Art. 627. *Dividends paid in property.*—Dividends paid in securities or other property (other than its own stock) in which the earnings of a corporation have been invested, are income to the recipients to the amount of the market value of such property when receivable by the shareholders. * * *"

■ The rule for the construction of statutes laid down by this court in Lynch v. Alworth-Stephens Co., 294 F. 190, 194, that "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover," has received the approval of the Supreme Court, and is now well settled. See Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 69 L.Ed. 660; Old Colony R. Co. v. Commissioner, 284 U.S. 552, 560, 52 S.Ct. 211, 76 L.Ed. 484. This rule is applied to taxing acts. DeGanay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042; Old Colony R. Co. v. Commissioner, supra.

■ But, while bearing in mind the foregoing rule, we must not forget that taxation is a practical matter, and that substance, not form, should control in the application of taxing statutes. United States v. Phellis, 257 U.S. 156, 42 S.Ct. 63, 66 L. Ed. 180; S. A. MacQueen Co. v. Commissioner (C.C.A.) 67 F.(2d) 857; Lonsdale v. Commissioner, 32 F.(2d) 537 (C.C.A. 8); and see generally Helvering, Commissioner v. Gordon (C.C.A.) 87 F.(2d) 663, opinion filed January 29, 1937.

■ It was the desire of Dr. William E. Minor that the real estate standing in the name of the Midland Realty Company should ultimately be vested in his daughter, Marie Minor Sanborn. This real estate had a fair market value of at least $212,200.79. The earned surplus of the Midland Realty Company undistributed and accumulated since February 28, 1913, was of the amount of $212,200.79.

A distribution of that amount by the Midland Realty Company to its shareholders would be a dividend, and taxable as such.

■ On the death of William E. Minor, any dividends distributed by the Midland Realty Company during the closing of the estate of William E. Minor would go, according to Missouri law, to the executors of the estate. Orchard v. Wright-Dalton-Bell-Anchor Store Co., 225 Mo. 414, 125 S. W. 486, 20 Ann.Cas. 1072.

The proper legal and logical steps to reach the result desired by William E. Minor were: (1) A distribution of dividend in kind (the real estate in question) and transfer of same by the Midland Realty Company to the executors of the estate, and payment by them of the tax on the same along with other income taxes; (2) an agreement between the executors and Marie Minor Sanborn and a resulting transfer of the real estate by the executors to Marie Minor Sanborn, and a release by her to the estate of her lieu legacy.

These steps could readily have been taken, since Marie Minor Sanborn was executrix of the will of William E. Minor, held the power to vote the stock of the Midland Realty Company, and was the person in whom it was desired to vest title to the real estate in question.

Of course the short-cut method actually taken also vested title to the real estate in the desired person; but it avoided tax on the dividend.

There is no issue as to an intent to evade the tax laws in the case, and no sufficient evidence to sustain such an issue; but the

138

result of the short-cut method taken is the same as if such an intent had existed.

We think the holding of the Board of Tax Appeals that a constructive dividend was distributed to the estate is correct.

We turn to the question of deduction under section 162(c) of the Revenue Act of 1928 (26 U.S.C.A. § 162(c) and note). When the executors of the estate received (constructively) from the Midland Realty Company the real estate held by that company, they received it as a distribution of accumulated undivided surplus, i. e., as a dividend; and it became part of the estate.

When the executors paid (constructively) to Marie Minor Sanborn the legacy described in paragraph 3 of the will of William E. Minor, they used the same real estate, because by so doing they were carrying out the ultimate purpose expressed by said William E. Minor in his will; and by so doing they were relieving the shares of stock in the Midland Realty Company of the charge against said stock which paragraph three had created.

The legacy created by paragraph 3 of the will to Marie Minor Sanborn was not payable contingently out of the income of the estate of William E. Minor. It was payable out of the estate whether that estate received income or not.

Paragraph 3 of the will provided a method of paying said legacy if the legatee consented, but the method of payment did not change the character of the legacy, nor make the payment a distribution of income as such. The deduction provided in section 162(c) of the Revenue Act of 1928 applies only to payments by the executors of income as such to a legatee, heir, or beneficiary. See Burnet v. Whitehouse, supra; Helvering v. Butterworth, supra.

Our conclusion is that the decision of the Board of Tax Appeals was correct, and it is accordingly affirmed.